Abran E. Vigil (NV 7548)
vigila@ballardspahr.com
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135-2958
Tel.:   702-471-7000
Fax:   702-471-7070

Edward Chang (NV 11783)
echang@mcnamarallp.com
MCNAMARA SMITH LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Tel.:   619-269-0400
Fax:   619-269-0401

*Attorneys for Court-Appointed Monitor,
Thomas W. McNamara*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Monitor for AMG Capital Management, LLC; BA Services LLC; Black Creek Capital Corporation; Broadmoor Capital Partners, LLC; Park 269, LLC; C5 Capital LLC; DF Services Corp.; DFTW Consolidated [UC] LLC; Impact BP LLC; Level 5 Apparel LLC; Level 5 Capital Partners LLC; Level 5 Eyewear LLC; Level 5 Motorsports, LLC; Level 5 Scientific LLC; NM Service Corp. (f/k/a/ National Money Service); PSB Services LLC; Real Estate Capital LLC (f/k/a/ Rehab Capital I, LLC); Sentient Technologies; ST Capital LLC; Westfund LLC; Eclipse Renewables Holdings LLC; Scott Tucker Declaration of Trust, dated February 20, 2015; West Race Cars, LLC; and Level 5 Management LLC; and their successors, assigns, affiliates, and subsidiaries,<br><br>            Plaintiff,<br>     v.<br><br>STEALTH POWER, LLC (f/k/a Energy Xtreme, LLC), a Texas Limited Liability Company,<br><br>            Defendant. | Case No.<br><br>**MONITOR'S COMPLAINT FOR (1) ACCOUNT STATED, AND (2) BREACH OF CONTRACT** |

Plaintiff, Thomas W. McNamara ("Plaintiff" or "Monitor"), in his capacity as the Court-appointed Monitor, hereby brings the following Complaint against Stealth Power, LLC ("Stealth"), and alleges the following:

**PARTIES**

1. Plaintiff is the Court-appointed Monitor in the related case *Federal Trade Commission v. AMG Services, Inc., et al.*, 2:12-cv-00536-GMN (VCF) (D. Nev.) ("*FTC v. AMG Services*"), appointed by the Order Appointing Monitor and Freezing Assets entered November 30, 2016 (ECF No. 1099) (the "Monitor Order"). A true and correct copy of the Monitor Order issued in *FTC v. AMG Services* is attached as **Exhibit A** and incorporated by reference. The Monitor Order directs the Monitor, *inter alia*, to preserve the value of the assets in the Monitorship Estate and authorizes the Monitor, *inter alia*, to institute actions to preserve or recover those assets. *See id.* at 12.

2. The Monitor Order defines the Monitorship Estate to include, *inter alia*, all assets of Scott Tucker (the individual defendant in *FTC v. AMG Services*) ("Tucker") and all assets of the "Monitor Entities" which are identified to include: the corporate defendants named in *FTC v. AMG Services* (AMG Capital Management, LLC ("AMG Capital"), Level 5 Motorsports, LLC ("Level 5"), Black Creek Capital Corporation ("Black Creek"), and Broadmoor Capital Partners, LLC ("Broadmoor Capital")); the corporate relief defendant named in *FTC v. AMG Services* (Park 269, LLC ("Park 269")); and multiple Tucker related and controlled entities: BA Services LLC ("BA Services"), C5 Capital LLC, DF Services Corp., DFTW Consolidated [UC] LLC, Impact BP LLC, Level 5 Apparel LLC, Level 5 Capital Partners LLC, Level 5 Eyewear LLC, Level 5 Scientific LLC, NM Service Corp. (f/k/a/ National Money Service) ("NMS"), PSB Services LLC, Real Estate Capital LLC (f/k/a/ Rehab Capital I, LLC), Sentient Technologies, ST Capital LLC, Westfund LLC, Eclipse Renewables Holdings LLC, Scott Tucker Declaration of Trust, dated February 20, 2015, West Race Cars, LLC, and Level 5 Management LLC, and their successors, assigns, affiliates, and subsidiaries.

///

///

1

3. Defendant Stealth is a limited liability company organized and existing under the laws of the state of Texas, with a current principal place of business at 3300 Bee Caves Road, Suite 650, Austin, TX 78746.

4. Stealth is the successor in interest to Energy Xtreme, LLC (also a Texas limited liability company), and is responsible for Energy Xtreme's debts to Westfund. Allegations referring to Stealth shall be understood as including reference to earlier actions by predecessor entity Energy Xtreme.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter under 28 U.S.C. § 754, 28 U.S.C. § 1345, and 28 U.S.C. § 1367(a), and the doctrines of supplemental and ancillary jurisdiction. *See S.E.C. v. Bilzerian*, 378 F.3d 1100, 1107 (D.C. Cir. 2004) ("the receiver's complaint was brought to accomplish the objectives of the Receivership Order and was thus ancillary to the court's exclusive jurisdiction over the receivership estate").

6. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391. Additionally, the Court retained jurisdiction of this matter for all purposes and appointed the Monitor on November 30, 2016 and this proceeding is supplemental to *FTC v. AMG Services*. *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 n.6 (6th Cir. 1981) ("[W]here jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well.").

7. The Court may exercise personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 1692 because the funds sought to be recovered are assets of the Monitorship Estate under the Court's Orders issued in *FTC v. AMG Services*.

## ALLEGATIONS COMMON TO ALL COUNTS

8. One of plaintiff's duties as Court-appointed Monitor is to collect money due or owing to Monitor Entities, including Westfund.

9. Defendant Stealth borrowed money from Monitor Entity Westfund on several occasions, under several written agreements. Genuine and accurate copies of several of these written agreements are attached hereto as **Exhibit B**.

///

2

10. Although the agreements are titled "Factoring and Security Agreement," the parties treated their relationship under the agreements essentially as a line of credit. Westfund advanced Stealth working capital on several occasions (enabling Stealth to, among other things, conduct operations and fulfill its contracts with Stealth customers), and Stealth made several repayments to Westfund directly.

11. Given the numerous agreements, advances, and repayments between the parties, daily interest calculation, and need to allocate repayments to interest vs. principal, the exact amount due from Stealth at any particular time required detailed calculation.

12. On or about January 31, 2016 through February 1, 2016, Devin Scott, Stealth's Manager (and signatory on Stealth's contracts with Westfund) exchanged several emails with David Feingold of Westfund, with the subject lines "Workout Proposal" and "RE: Workout Proposal." **Exhibit C** is a genuine and accurate copy of said emails.

13. As stated by Mr. Scott in **Exhibit C**, Mr. Scott had met with Mr. Feingold and Glenn Fisher approximately two weeks prior to the email, to discuss Stealth's debt to Westfund and work out a repayment proposal.

14. In Exhibit C, Mr. Scott proposed that the parties agree to $533,950 as the amount due as of January 31, 2016. He stated: "To date, $550,000 has been advanced by Westfund to either Stealth Power or Energy Xtreme over 9 transactions covering 5 POs with $266,000 in payments made to Westfund. ... As of 1/31, there has been a total of $249,950 in interest and fees incurred, leaving a total balance due of $533,950." In addition, Mr. Scott proposed a repayment schedule by which the full sum Stealth owed Westfund would be repaid by mid-September 2016.

15. Westfund accepted Mr. Scott's statement of the sum due on Stealth's account as $533,950 (as of January 31, 2016), while noting that Westfund's figures showed "a little difference" with Mr. Scott's proposed number. Westfund reiterated that 18% interest (calculated on a daily basis) would continue to accumulate, as well as how payments would be allocated against accrued interest and principal.

16. Stealth's proposal having been accepted, it made several payments in February and March 2016 to attempt to meet the workout proposal, specifically, $40,000 on February 1,

3

$59,641 on February 10, and $15,000 on March 30. However, Stealth has failed to make full payment on the $533,950 owed as of January 31, 2016.

17. Interest continues to accumulate on Stealth's debt at a rate of 18% (calculated daily).

18. In the contracts attached in Exhibit B, Stealth agreed to pay all costs and fees incurred by Westfund in collecting amounts due including, without limitation, attorneys' fees and costs.

## COUNT 1

## ACCOUNT STATED

19. Plaintiff repeats and realleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

20. As of February 1, 2016, Stealth owed Westfund money from previous financial transactions between Stealth (including its predecessor Energy Xtreme) and Westfund.

21. On or about February 1, 2016 (as a result of discussions from at least mid-January 2016), Stealth and Westfund, by words or conduct, agreed that the $533,950 stated in Exhibit C was the correct amount owed to Westfund as of January 31, 2016, with interest to accumulate and payments to be treated as set forth in Exhibit C.

22. Stealth, by words or conduct, promised to pay the stated amount to Westfund.

23. Stealth has not paid Westfund all of the amount owed under this account.

24. The amount of money Stealth owes is $533,950 as of January 31, 2016, minus payments Stealth made to Westfund after January 31, 2016, plus agreed interest.

## COUNT 2

## BREACH OF CONTRACT

25. Plaintiff repeats and realleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

26. The contracts attached in Exhibit B are valid and enforceable contracts, supported by good and valuable consideration.

///

4

27. Plaintiff substantially performed all material obligations and has satisfied any and all conditions precedent to bringing a claim under those contracts, or in the alternative, any and all conditions precedent have been waived.

28. The contracts are fully matured, and Stealth has materially breached them by defaulting and refusing to pay the amounts due under them.

29. Plaintiff has suffered damages as a direct and proximate result of the breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Monitor, on behalf of Monitor Entity Westfund, respectfully prays for judgment in his favor and against Defendant Stealth as follows:

1. A money judgment of $533,950 as of January 31, 2016, minus payments Stealth made to Westfund after January 31, 2016, plus pre-judgment interest at the contractual rate of 18%, and post-judgment interest;

2. For attorneys' fees, expenses, and costs; and

For such other and further relief as the Court may deem proper.

Dated:  September 19, 2018                    MCNAMARA SMITH LLP

                                              By:   /s/ Edward Chang
                                                    Attorneys for Court-Appointed Monitor,
                                                    Thomas W. McNamara